UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAYTON'S AUTO GLASS, INC., LAURA TAYLOR, LINSCOTT LAW FIRM, PLLC, and APRIL M. LINSCOTT, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>FIRST DATA CORPORATION, FIRST DATA MERCHANT SERVICES CORPORATION, and DOES 1-25, inclusive,<br><br>        Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT<br>and DEMAND FOR JURY TRIAL** |

Plaintiffs Clayton's Auto Glass, Inc., Linscott Law Firm, PLLC, April M. Linscott, and Laura Taylor, for their complaint against Defendants allege as follows:

I.   **NATURE OF THE CASE**

1.   This action is brought as a class action on behalf of all persons, businesses, and organizations who entered into equipment leases with Defendants and were enrolled in or otherwise charged fees or premiums in connection with Defendants' Equipment Protection Program, or any other similar program of Defendants, purporting to insure the leased equipment or to otherwise provide coverage against damage or loss to the equipment.

II.   **JURISDICTION AND VENUE**

2.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Plaintiffs and at least one class member are of diverse

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

citizenship from one Defendant and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs. The equipment lease agreement between Plaintiffs and Defendants provides that the exclusive venue for any lawsuit in connection therewith be brought in the "appropriate state or federal court located in Suffolk County, New York."

### III.     THE PARTIES

3.      Plaintiff Clayton's Auto Glass, Inc. is a Texas corporation doing business in Amarillo, Texas.  Plaintiff Laura Taylor (hereinafter "Taylor" and "Clayton's Auto Glass" are used interchangeably) is the President of Clayton's Auto Glass, Inc. and is a resident of Amarillo, Texas. At all relevant times, Plaintiff Clayton's Auto Glass, Inc. leased a credit card processing terminal from Defendants. The lease agreement was contained within an application for credit card processing services, which Plaintiff Taylor, as President of Clayton's Auto Glass was required to sign as a personal guarantor.  The application committed Plaintiff Taylor to a non-cancellable, 48-month lease with First Data for a desktop credit card processing terminal at a monthly rate of $149.99 ($7,199.52 total). Subsequently, Plaintiff Taylor received a letter from First Data Global Leasing welcoming her as customer and informing her that she had entered into an equipment lease with Defendants.  Plaintiff Taylor also received letters and mailings from Defendants regarding Defendants' Equipment Protection Program, which, for an additional monthly fee, offered full replacement insurance coverage of the equipment in the event of a covered loss. Defendants subsequently debited from Plaintiff Taylor's account additional monthly fees related to the Equipment Protection Program.  In addition to these monthly fees, Plaintiff Taylor has paid at least $1,799 in lease payments as of the time of filing.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

4.      Plaintiff Linscott Law Firm, PLLC, is an Idaho professional limited liability company with its principal place of business in Kootenai County, Idaho.  Plaintiff April Linscott is a resident of Kootenai County, Idaho (hereinafter "Linscott" and "Linscott Law Firm" are used interchangeably). Plaintiff Linscott was the sole managing member of the company, Linscott Law Firm, which was dissolved on November 7, 2011.  At all relevant times, Linscott Law Firm leased a credit card processing terminal and pin pad from Defendants. Plaintiff Linscott was also required to sign the application as a personal guarantor.  Within the application for credit card processing services was a provision committing Linscott Law Firm to a non-cancellable, 48-month lease with First Data for a desktop credit card processing terminal and pin pad, at a monthly rate of $47.00 ($2,256 total). Following her submission of the application, Plaintiff Linscott received several letters and mailings from Defendants regarding Defendants' Equipment Protection Program, which offered, for an additional monthly fee, full replacement insurance coverage of the equipment in the event of a covered loss. Defendants subsequently debited from Plaintiff Linscott's account additional monthly fees related to the Equipment Protection Program. In addition to these monthly fees, Plaintiff Linscott has paid at least $987 in lease payments as of the time of filing.

5.      Defendant First Data Corporation ("FDC") is a Delaware corporation with its principal place of business in Atlanta, Georgia. FDC provides credit and debit card processing services to merchants throughout the United States and the world. Although FDC does have a small direct sales force, it relies primarily on an army of third-party resellers and independent sales organizations to sell its credit and debit card processing services.

6.      Defendant First Data Merchant Services ("FDMS") is a subsidiary of FDC. FDMS is a Florida corporation with its principal place of business in Atlanta, Georgia. FDMS

provides additional services to merchants, including equipment leases for point-of-sale and payment processing terminals.

7. The true names or capacities of Defendants sued herein as Doe 1 through Doe 25 are unknown to Plaintiffs. Plaintiffs further allege that each fictitious Doe Defendant is in some manner responsible for the acts and occurrences set forth in the Complaint. Plaintiffs will seek leave to amend this Complaint to show their true names and capacities when the same are ascertained as well as the manner in which each fictitious Defendant is responsible for the damages sustained by Plaintiffs.

## IV. FACTUAL ALLEGATIONS

8. Defendants First Data Corporation, First Data Merchant Services, and their related entities (collectively, "First Data") provide payment processing services to merchants throughout the United States. In connection with these services, First Data also leases point-of-sale terminals and other equipment used for processing debit and credit cards. Most of First Data's equipment leases are with small businesses.

9. First Data's equipment leases are non-cancellable and usually have a term of 3-4 years. Under the leases' terms and conditions (which can be found, along with the terms of the merchant processing agreement, in a voluminous "Program Guide"), the customers bear the risk of loss for damage to the equipment. The leases also purport to require customers to insure the equipment against loss by theft, fire, and all other hazards. After entering into the lease agreement, customers are requested to provide proof of their own insurance, such as a certificate of insurance that names First Data as an additional insured, or to purchase insurance through First Data.

10. Subsequent to entering into equipment leases, customers are sent letters, informational brochures, and insurance verification forms from First Data Global Leasing (hereinafter "FDGL"), a division of First Data. The information contained therein communicates to customers that, for a monthly fee, they can insure the equipment against the risk of loss or damage by enrolling in FDGL's Equipment Protection Program.

11. After entering into a lease agreement with First Data, customers receive a letter from FDGL welcoming them as new equipment lessees and explaining the benefits of the Equipment Protection Program. This letter touts the advantages of the FDGL's "insurance program" over standard commercial property policies. The letter explains that the insurance program offers no deductible coverage for a low monthly charge, which includes the premium, fees for tracking the insurance, and a fee that is paid to FDGL. The letter states:

> In order to help you comply with your lease agreement terms, which require you to maintain property insurance on the equipment, an insurance program has been arranged through Great American Insurance Company that offers **no deductible** coverage for as low as $4.95 a month. This program provides greater coverage than normally found in a standard commercial property policy, and provides you with an efficient means for replacement should the equipment be lost, stolen, destroyed, or damaged.
>
> **THE INSURANCE CHARGE INCLUDES PREMIUM, FEES FOR TRACKING THE INSURANCE, AND ADMINISTRATION EXPENSES (INCLUDING A FEE PAYABLE TO THE LEASING COMPANY). . . .**
>
> **Contact FDGL Insurance Department . . . to authorize your insurance today, or complete the enclosed Acceptance Form and Mail or Fax it back . . . .**
>
> (emphasis in original).

Included with this first welcome letter is a separate Insurance Verification Form (hereinafter "Verification Form"), as well as a tri-fold brochure explaining First Data's Equipment Protection Program (hereinafter "Brochure").

12. The Verification Form, which is to be filled out and signed by the customer and returned to FDGL, requests the customer to select one of following two options:

> **YES**, I elect to have my equipment insured under First Data's insurance policy, arranged by Great American Insurance Company, as described below.
>
> **NO**, I am providing a Certificate of Insurance as evidence of my own insurance that meets the requirements of my lease agreement, which I have attached to my response.
>
> (Emphasis in original.)

On the back side of the Verification Form is an explanation of the program. It states, "The First Data Equipment Protection Program provides **FULL REPLACEMENT** coverage for several important types of loss." (Emphasis in original). The Verification Form lists the covered losses and key exclusions and directs the merchant to call a toll free number and provide a statement about any loss.

13. The Brochure, which is enclosed with the first welcome letter and the Verification Form, is titled "Equipment Protection Program" and explains several different aspects of the program, such as "Protection," "Claim Service," and "Other Benefits." Under the section titled "Coverage" it states: "First Data offers you an opportunity to protect the new equipment you are using from several important types of loss." The losses listed on the Brochure include: burglary, power surge, flood and water, accidental damage, employee theft, robbery, volcanic action, falling objects, wind, hurricane, tornado, theft, lightning, fire, vandalism, transit, smoke, hail, and collapse.

14. The Brochure also touts the program's responsive claim service, stating that it utilizes "claims adjusters who specialize in leased equipment claims so you get the replacement

equipment quickly and effectively." As for making a claim, customers are directed to call a toll free number "to provide a statement about the loss to Great American Insurance Group."

15. In addition to the first welcome letter, the Verification Form, and the Brochure, FDGL also sends customers a second welcome letter, which contains information regarding the lease, such as the term, the monthly payment, the equipment leased, and the first payment date. Enclosed with the second welcome letter are additional copies of the Brochure and Verification Form. The second welcome letter also states the following:

> **<u>Per the terms of your lease agreement you are required to insure the equipment covered by the lease.</u>  FDGL offers coverage for you starting as low as $4.95 a month, fixed for the term of your lease. Simply sign the attached verification form and return it to us . . . .**

(Emphasis in original.)

16. Other, additional letters are sent to First Data's customers. One such letter emphasizes to the customer the importance of making smart business decisions that will lower costs and help business run smoothly. The letter describes the insurance program as "an unprecedented offer for you and your business" that will help meet the business owner's goals. The letter also extols the benefits of the plan, stating:

> This program provides broader coverage than most standard commercial property policies and allows your business these benefits:
>
> **-NO DEDUCTIBLE;**
>
> **-TERMINAL REPLACEMENT PROGRAM**
>
> **-A simple, cost-effective way to provide property insurance on the equipment as your lease requires**
>
> **-Peace of mind in knowing that any business interruption you might experience if that equipment is lost, stolen or damaged, will be minimized**

(Emphasis in original).

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

The letter invites merchants to "[t]ake advantage of this great offer today" and directs them to "[c]ontact FDGL Insurance Department at (800) 879-0137 to authorize your insurance today. . . ."

17.     FDGL's representations in the first welcome letter, the second welcome letter, the Brochure, the Verification Form, and other similar mailings unequivocally communicate to the customer that in exchange for a monthly fee, the customer will be enrolled in the Equipment Protection Program, or a similar program, and will be entitled to full replacement insurance coverage in the event the equipment is lost or damaged.

18.     Alternatively, if enrollment in the Equipment Protection Program or similar programs does not actually entitle the customer to any tangible benefits in the event of a loss, such as replacement of the equipment, then the statements in the first welcome letter, the second welcome letter, the Brochure, the Verification Form, and other similar mailings are untrue and constitute fraud and/or intentional misrepresentation.

19.     Plaintiffs are informed and believe, and therefore allege, that FDGL conducts business related to the Equipment Protection Program and/or similar programs from locations in Florida and/or New York. For example, the first welcome letter, the second welcome letter, the Brochure, the Verification Form, and other similar mailings are sent from an address in Coral Springs, Florida, and instruct customers to direct their replies to the same address. Also, Defendants have substantial facilities in New York and many of the services provided to customers are provided from these facilities.

20.     The terms of Defendants' Equipment Protection Program and and/or similar programs constitute a contract of insurance under the laws of the states of Florida, New York, and most, if not all, other states. Plaintiffs are informed and believe, and therefore allege, that

Defendants are not licensed in any state to engage in the business of insurance. Accordingly, the terms of Defendants' Equipment Protection Program and/or similar programs are void or voidable.

21. Furthermore, Plaintiffs are informed and believe, and therefore allege, that customers who do not provide proof of insurance are automatically enrolled in First Data Global Leasing's Equipment Protection Program and/or other similar programs and have the monthly insurance fee debited from their bank accounts.

22. In addition to constituting a void or voidable contract of insurance, it is readily apparent that Defendants' Equipment Protection Program and/or similar programs serve no legitimate purpose but are merely a vehicle for imposing additional "junk fees" or hidden "excess charges" designed to line the pockets of First Data and its affiliates at the expense of unsuspecting small business owners.

23. Indeed, First Data does not have any real risk exposure or need to impose an insurance requirement because the average customer's monthly lease payment and insurance fee/premium are already *grossly* disproportionate to the actual value of the equipment and the incremental cost of insuring the equipment. In a FDGL lease, the customer pays approximately $50 to $200 or more a month over 3-4 years for a basic credit card swiping machine, typically one that is manufactured by First Data. However, the exact same machine can usually be purchased outright for between $175 and $350 at office supply stores like Office Depot and Staples, and numerous online retailers. As a result, many customers end up paying $7,000 or more to lease a piece of equipment that has a retail value of $350 or less. (However, due to the unfair and deceptive practices of First Data and other third-party sellers and independent sales

organizations, most customers, who come to First Data primarily for card processing services, not equipment leases, have no idea that the equipment can be purchased rather than leased.)

24. The enormous disparity between the equipment's real value and the aggregate monthly lease payments only highlights the illusory nature of FDGL's Equipment Protection Program. Under this program, customers are being charged an additional $4.95 or more per month to have the inexpensive piece of equipment insured against the risk of damage or loss, notwithstanding the fact they may already be renting the equipment for up to 40 times its retail value. In most cases, the amounts paid over the course of the lease in insurance premiums and fees, alone, would be enough to purchase the equipment outright. However, because FDGL's insurance requirement can only be discovered after wading through a 50+ page Program Guide (which is rarely, if ever, provided to the customer), most customers enter into these non-cancellable leases unaware of any equipment insurance requirement. Consistent with Plaintiffs' agreements, the first mention of equipment insurance is in the initial welcome letter from FDGL, which is sent after merchants have already entered into their equipment lease with First Data.

25. Furthermore, because of First Data's billing practices, the insurance coverage fees are hidden, and customers are not likely to notice if they have been assessed additional insurance fees or premiums. Customers do not receive separate invoices for equipment lease payments. Rather, the lease payments are made in conjunction with the debiting of fees under the customer's payment processing agreement, through which First Data has access to the customer's bank accounts. On a monthly basis, First Data debits the lease payment, the equipment insurance fee, and a multitude of other fees related to the payment processing agreement—many of which vary in amount from month to month depending on the volume of transactions—from the customer's account. However, First Data does not provide customers

with itemized statements that indicate to the customer whether a portion of the monthly debit is attributable to the equipment insurance fee. Because statements are not provided and because the debit amounts vary each month, First Data's practice of unilaterally charging additional fees or premiums for equipment insurance goes unnoticed by customers.

## V.     CLASS ALLEGATIONS

26.    Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "plaintiff class"), defined as follows:

> **All persons, businesses, entities and organizations who, from the time period set by the applicable statute of limitations prior to the filing of this action to the date of judgment, have entered into equipment leases with Defendants First Data Corp., First Data Merchant Services Corp., and/or any of their parent, subsidiary, commonly controlled, commonly owned or otherwise related companies, and have been enrolled in, or paid fees arising out of, First Data's Equipment Protection Program or any other similar program purporting to insure the leased equipment or offering coverage for damage to or loss of the leased equipment.**

27.    This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, typicality, adequacy, and superiority requirements for class certification, because:

a)    Individual joinder of class members is impracticable.  Plaintiffs are informed and believe and therefore allege that the class consists of at least thousands of persons, businesses, and organizations.

b)    Common questions of law and fact exist as to all members of the class that predominate over any question that affects only individual class members.  These common questions of law and fact include, without limitation:

1) whether the terms of First Data's Equipment Protection Program and/or similar programs constitute a contract of insurance;

2) whether First Data was engaged in the business of insurance;

3) whether First Data was properly licensed to engage in the business of insurance;

4) whether First Data improperly charged customers an equipment insurance fee and/or premium;

5) whether First Data withdrew money from customers' bank accounts to pay for equipment insurance fees and/or premiums;

6) whether the terms of First Data's Equipment Protection Program entitled customers to full replacement coverage and/or other tangible benefits in the event of loss or damage to the equipment;

7) whether contracts for coverage under First Data's Equipment Protection Program violate Florida insurance laws;

8) whether contracts for coverage under First Data's Equipment Protection Program violate New York insurance laws;

9) whether statements and omissions made to customers in connection with First Data's Equipment Protection Program and/or similar programs constitute fraud and/or intentional misrepresentation;

10) whether contracts for coverage under First Data's Equipment Protection Program and/or similar programs are void and/or voidable;

11) whether Plaintiffs and Plaintiff Class members are entitled to declaratory relief; and

12) whether Plaintiffs and Plaintiff Class members have been damaged by Defendants' conduct and, if so, in what amount.

c) Plaintiffs' claims are typical of the claims of Plaintiff Class members because Plaintiffs are merchants who entered into a merchant processing agreement with First Data that included an equipment lease. Plaintiffs were subsequently charged an additional monthly fee to have the equipment insured.

d) Plaintiffs are adequate representatives of the Plaintiff Class because they share the same interests as all Plaintiff Class members and because their claims are typical of those of the Plaintiff Class members. Plaintiffs have retained competent counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of Plaintiff Class members.

e) A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since it is impractical to individually join all persons, businesses, and organizations who have entered into equipment leases with First Data and have enrolled in the Equipment Protection Program or have been charged fees to have the equipment insured. Such persons' losses are modest in relation to the expense and burden of individual prosecution of the litigation necessitated by Defendants' wrongful conduct. It would be very difficult for Plaintiff Class members to efficiently redress their wrongs individually. Even if all Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

Class members themselves could afford such individual litigation, the Court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments. Individualized litigation would also magnify the delay and expense to all parties and to the court system presented by the issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as economy of scale and expense.

   f) First Data has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.

## COUNT I

### Violation of Florida Insurance Statutes

   28. Plaintiffs incorporate the foregoing paragraphs by reference as though set forth fully herein.

   29. Defendants have engaged in the business of insurance in violation of Florida's insurance laws. Coverage under Defendants' Equipment Protection Program and/or similar programs constitutes "insurance" within the meaning of Florida insurance laws, including but not limited to Florida Statute 624.02. The parties entered into a contract whereby Defendants undertook to indemnify customers or to pay or allow a specified amount or a determinable benefit upon determinable contingencies, namely the loss of the equipment by fire, theft, or other hazards.

   30. Defendants were required to hold a certificate of authority to engage in the business of insurance within the State of Florida under Florida Statute 624.401. Defendants

maintained offices or facilities located in Florida from which they solicited insurance applications and otherwise transacted insurance in Florida and in other states and countries.

31. On information and belief, Defendants did not have a certificate of authority to engage in the business of insurance within the State of Florida, making Defendants' insurance contracts with Plaintiffs and Plaintiff Class members void or voidable.

32. Plaintiffs and the Plaintiff Class are entitled under the common law, Florida Statute 624.155, and other statutes to bring a civil suit seeking damages for violations of Florida's insurance laws, including but not limited to the certification requirements, and are entitled to seek the relief described below.

## COUNT II

### Violation of New York Insurance Statutes

33. Plaintiffs incorporate the foregoing paragraphs by reference as though set forth fully herein.

34. Defendants have engaged in the business of insurance in violation of New York's insurance laws. Enrollment in Defendants' Equipment Protection Program constitutes an "insurance contract" within the meaning of New York insurance laws, including but not limited to New York Insurance Law §1101(a). In exchange for monthly payments from merchants, the beneficiaries under the contract, Defendants were obligated to confer a benefit of pecuniary value to merchants upon the happening of a fortuitous event (*i.e.*, theft, fire, or other named hazards), which event would adversely affect the material interests of the merchants.

35. Defendants engaged in acts that constituted doing an insurance business under New York Insurance Law §1101, *et seq.*, including but not limited to the following: making, or proposing to make, as insurer, an insurance contract, including either issuance or delivery of a

policy or contract of insurance to New York residents or to firms, associations, or corporations authorized to do business in New York; soliciting applications for insurance contracts within the State of New York; collecting any premium, membership fee, assessment or other consideration for any policy or contract of insurance; and doing or proposing to do any business in substance equivalent to the business of insurance in a manner designed to evade the provisions of New York Consolidated Laws Chapter 28.

36. Plaintiffs are informed and believe, and therefore allege, that Defendants were not licensed to engage in the business of insurance within the State of New York.

37. Under common law and New York statutes, including but not limited to New York Insurance Law §3103, Defendants' equipment insurance contracts are non-conforming and unlawful and are, therefore, void or voidable.

38. Plaintiffs and the Plaintiff Class are therefore entitled to the relief described below.

## COUNT III

### Fraud and/or Intentional Misrepresentation

39. Plaintiffs incorporate the foregoing paragraphs by reference as though set forth fully herein.

40. Defendants made false statements of material fact, including but not limited to, statements that equipment insurance could be purchased through First Data Global Leasing, statements that First Data will provide equipment insurance coverage for the merchant at a fixed monthly rate, and statements that the Equipment Protection Program provides full replacement coverage for several important types of loss, which representations were false and/or incomplete.

41.     Defendants made these various false statements of material fact to Plaintiffs and members of the Plaintiff Class knowingly and willfully and with the intent that they be relied upon.

42.     Plaintiffs and members of the Plaintiff Class justifiably relied on these false statements and, as a direct and proximate result, have been damaged in an amount as yet unknown.

## COUNT IV

### Declaratory Relief

43.     Plaintiffs incorporate the foregoing paragraphs by reference as though set forth fully herein.

44.     A real and actual controversy has arisen and now exists between Plaintiffs and Defendants concerning the legality and enforceability of the provisions of Defendants' Equipment Protection Program and/or similar programs.  Plaintiffs seek a determination and a declaration that these provisions constitute contracts of insurance that violate state insurance laws and are void.  In the alternative, Plaintiffs seek a determination and a declaration that these provisions contain fraudulent statements and/or intentional misrepresentations and are likewise unlawful and unenforceable.

45.     Plaintiffs also pray for damages on their behalf and on behalf of Plaintiff Class members to the extent Defendants have collected fees to which they are not entitled and to the extent they have enforced agreements which are unlawful, void, and/or the product of fraud/intentional misrepresentation.

## COUNT V

### Unjust Enrichment

46.     Plaintiffs incorporate the foregoing paragraphs by reference as though set forth fully herein.

47.     As a result of their wrongful acts and omissions described herein, Defendants have been unjustly enriched at the expense of Plaintiffs and the Plaintiff Class. Defendants have wrongfully benefited by charging and receiving unlawful premiums and/or fees from Plaintiffs and the Plaintiff Class.

48.     It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained by them from their wrongful conduct. Plaintiffs and the Plaintiff Class are entitled to full restitution and/or disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on their behalf and on behalf of the Plaintiff Class, as follows:

1.     A declaration that the terms of Defendants' Equipment Protection Program, and/or any similar program is void and/or voidable;

2.     A declaration that Defendants' mailings and/or communications relating to the Equipment Protection Program, and/or any similar program, contain fraudulent statements and/or intentional misrepresentations;

3.     An award of damages in an amount to be determined at trial, and an award of prejudgment interest at the maximum rate allowable by law;

    4.       The costs of suit, including, but not limited to, attorneys' fees; and,

    5.       Such other and further relief as may be just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims so triable herein.

DATED: October 5, 2012

Respectfully Submitted,

**WeissLaw, LLP**

*[signature]*

Joseph H. Weiss
James E. Tullman
David C. Katz
1500 Broadway, 16th Fl.
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
jweiss@weisslawllp.com
jtullman@weisslawllp.com
dkatz@weisslawllp.com

Jeffery J. Crandall
Ryan J. Crandall
**OWENS & CRANDALL, PLLC**
8596 N. Wayne Dr., Ste. A
Hayden, Idaho 83835
Telephone: (208) 667-8989
Facsimile: (208) 667-1939

Attorneys for Plaintiffs