UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAYTON'S AUTO GLASS, INC., LAURA TAYLOR, LINSCOTT LAW FIRM, PLLC, and APRIL M. LINSCOTT, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>FIRST DATA CORPORATION, FIRST DATA MERCHANT SERVICES CORPORATION, and DOES 1-25, inclusive,<br><br>          Defendants. | Case No.: 12-cv-05018-JS-AKT |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**WeissLaw LLP**
Joseph H. Weiss
James E. Tullman
David C. Katz
1500 Broadway, 16th Fl.
New York, New York 10036
Telephone:   (212) 682-3025
Facsimile:   (212) 682-3010

**OWENS & CRANDALL, PLLC**
Jeffery J. Crandall
Ryan J. Crandall
8596 N. Wayne Dr., Ste. A
Hayden, Idaho 83835
Telephone:   (208)  667-8989
Facsimile:   (208)  667-1939

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

III.    ARGUMENT ........................................................................................................4

        A.      Legal Standard On A Motion To Dismiss ................................................4

        B.      Plaintiffs Have Adequately Stated a Claim for Violation of Florida
                Insurance Law .............................................................................................6

        C.      Plaintiffs Have Adequately Stated A Claim For Violation Of New York
                Insurance Law .............................................................................................8

        D.      Plaintiffs Have Pled Fraud With Particularity .......................................12

                1.      Plaintiffs Have Alleged Facts Giving Rise To A Strong Inference
                        Of Scienter .....................................................................................14

                2.      Defendants Were Aware Of Facts And/Or Had Access To
                        Information That Contradicted Their Public Statements .........................16

                3.      The Complaint Adequately Pleads Defendants' Concrete Benefit............16

                4.      Plaintiffs Have Adequately Pled Reliance ................................................18

        E.      Declaratory Relief Is Warranted ...........................................................19

        F.      Plaintiffs Have Properly Pled A Cause Of Action For Unjust Enrichment..........20

IV.     CONCLUSION..............................................................................................23

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009) ...................................................................17

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009).....................................................................................5

*Bell Atlantic Corp. v.   Twombly*,
    550 U.S. 544 (2007)....................................................................................4, 5

*Chill v. General Electric Co.*,
    101 F.3d 263 (2d Cir. 1996) ..........................................................................15

*City of Brockton Retirement System v. Shaw Group, Inc.*,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008) ..............................................................15

*DiPetto v. U.S. Postal Serv.*,
    2010 U.S. App. LEXIS 14184 (2d Cir. July 12, 2010).........................................5

*Dornberger v. Metropolitan Life Insurance Co*,
    961 F. Supp. 506 (S.D.N.Y. 1997) ...............................................................9, 10

*Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*,
    411 F.3d 384 (2d Cir. 2005) ..........................................................................19

*In re EVCI Colleges Holding Corp. Sec. Litigation*,
    469 F. Supp. 2d 88 (S.D.N.Y. 2006) ................................................................16

*Erickson v. Pardus*,
    551 U.S. 89 (2007).........................................................................................5

*Freudenberg v. ETrade Finance Corp.*,
    2010 U.S. Dist. LEXIS 46053 (S.D.N.Y. May 11, 2010) ......................................4

*Heller v. Goldin Restructuring Fund, LLP*,
    590 F. Supp. 2d 603 (S.D.N.Y. Dec. 22, 2008)....................................................16

*Intelligent Digital System, LLC v. Visual Management System, Inc.*,
    683 F. Supp. 2d 278 (E.D.N.Y. 2010) ...........................................................4, 12

*Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co.*,
    2009 WL 910969 (W.D.N.Y. Mar. 31, 2009) ................................................11, 12

ii

*Lefkowitz v. Bank of N.Y.*,
  676 F. Supp. 2d 229 (S.D.N.Y. 2009) ...............................................................17

*London v. Walmart Stores, Inc.*,
  340 F.3d 1246 (2003) ...........................................................................................6

*In re Marsh & McLennan Cos. Sec. Litigation*,
  501 F. Supp. 2d at 490 (S.D.N.Y. 2006) ...........................................................18

*Mgr Meats, Inc. v. Schweid*,
  2012 U.S. Dist. LEXIS 181481 (E.D.N.Y. Dec. 21, 2012) ...........................20, 21

*In re MoneyGram International, Inc. Sec. Litigation*,
  626 F. Supp. 2d 947 (D. Minn. 2009) ...............................................................15

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .........................................................................15, 16

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ................................................................................5

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
  449 F. App'x 57 (2d Cir. 2011) .........................................................................21

*Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*,
  2008 WL 1910503 (S.D.N.Y. Apr. 30, 2008) ....................................................11

*Robinson v. Mutual Reserve Life Insurance Co.*,
  182 F. 850 (S.D.N.Y.1910), *aff'd,* 189 F. 347 (2d Cir.1911) .................................9

*In re Scholastic Corp. Sec. Litigation*,
  252 F.3d 63 (2d Cir. 2001) ................................................................................12

*State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, P.C.*,
  2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. Sept. 5, 2008) ...............................22, 23

*State Farm Mutual Automobile Insurance Co. v. Grafman*,
  655 F. Supp. 2d 212 (E.D.N.Y. 2009) ...........................................................18, 19

*State of Fla., Office of Atty. General, Department of Legal Affairs v. Tenet Healthcare Corp.*,
  420 F. Supp. 2d 1288 (S.D.Fla. 2005) ................................................................8

*Tellabs, Inc. v. Manor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).......................................................................................14, 15

*Universal Acupuncture Pain Services v. State Farm Mutual Automobile Insurance Co.*,
    196 F. Supp. 2d 378 (S.D.N.Y. 2002) ................................................................22

*Wood v. Capital One Services, LLC*,
    2010 U.S. Dist. LEXIS 60662 (N.D.N.Y. June 18, 2010).....................................5

## STATE CASES

*3405 Putnam Realty Corp. v. Chubb Custom Insurance Co.*,
    788 N.Y.S.2d 64 (N.Y. App. Div. 2005) ..............................................................11

*AHA Sales, Inc. v. Creative Bath Prods., Inc.*,
    *58 A.D.3d 6, 15-16,* 867 N.Y.S.2d 169 (2d Dept 2008) .........................................9

*Atkin v. Hill, Darlington & Grimm*,
    15 A.D.2d 362, 224 N.Y.S.2d 553 (1962), *aff'd,* 12 N.Y.2d 940, 238 N.Y.S.2d 516,
    188 N.E.2d 790 (1963) ...........................................................................................8

*Barna v.  Clifford Country Estates, Inc.*,
    143 Misc. 813, 258 N.Y.S. 671 (City Ct. 1932).................................................8, 9

*Carrube v. New York City Transit Authority*,
    291 A.D.2d 558, 738 N.Y.S.2d 67 (2d Dept 2002) ................................................9

## FEDERAL STATUTES

Fed. R. Civ. P. 8.................................................................................................................5

Fed. R. Civ. P. 9(b) ...............................................................................................5, 12, 17

## STATE STATUTES

Fla. Stat. §§ 624.155, 624.401 .......................................................................................6, 7

N.Y. Ins. Law §4101 *et seq.*..............................................................................................11

N.Y. Ins. Law §1102(e) ...................................................................................................10

N.Y. Ins. Law § 1101(b)(1) ...............................................................................................9

N.Y. Ins. Law § 1102(a) .....................................................................................................9

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint.[1]

## I.        PRELIMINARY STATEMENT

This action is brought as a class action on behalf of all persons, businesses, and organizations who entered into equipment leases with First Data and were enrolled in its Equipment Protection Program, which purports to insure the leased equipment or to otherwise provide coverage against damage or loss.  Unbeknownst to Plaintiffs and the Class, Defendants (as defined below) were not licensed or authorized to provide equipment protection coverage or insurance for the point of sale ("POS") equipment they were leasing to customers.  As such, the provisions of the contracts relating to this purported service were null and void, and provided no legitimate benefit to Plaintiffs and Class Members.  Moreover, Defendants through the use of uniform marketing materials and letter agreements defrauded Plaintiffs and the Class out of extraordinary amounts of monies through their unlawful collection of equipment protection fees. Defendants debited these hidden fees from Plaintiffs accounts throughout the entire term of their leases.

As a result of First Data's actions, Plaintiffs have brought this action asserting claims for violations of Florida and New York insurance laws as well as Fraud, Declaratory Relief, and Unjust Enrichment. Defendants now seek to dismiss these claims under Rule 12(b)(6).  However, Plaintiffs' claims have been adequately pleaded in the Complaint and Defendants' motion should be denied.

---

[1]  "¶_." refers to Plaintiffs' Class Action Complaint filed with this Court on October 5, 2012 (the "Complaint").

## II.    STATEMENT OF FACTS

Defendants First Data Corporation, First Data Merchant Services, and their related entities (collectively, "First Data" or the "Defendants") provide payment processing services to merchants throughout the United States. In connection with these services, First Data also leases point-of-sale terminals and other equipment used for processing debit and credit cards. Most of First Data's equipment leases are with small businesses.

First Data's leases are typically non-cancellable for a term of 3-4 years, during which time the merchant bears the risk of loss for damage to the equipment.  First Data requires merchants to have the equipment insured. To satisfy the insurance requirement, merchants are given the option of either naming First Data as an additional insured under their own policies, or purchasing insurance through First Data by enrolling in the Equipment Protection Program.

Plaintiffs Linscott (Linscott Law Firm, PLLC) and Taylor (Clayton's Auto Glass, Inc.) are Idaho and Texas residents, respectively, who entered into non-cancellable 4-year leases with First Data for their businesses and were subsequently charged fees related to First Data's Equipment Protection Program.  After entering into their leases, both Plaintiffs were sent several mailings from First Data's Florida offices welcoming them as new equipment lessees and explaining the benefits of the Equipment Protection Program. These mailings touted the advantages of First Data's "insurance program" over standard commercial property policies. The mailings explained that the insurance program offers no deductible coverage for a low monthly charge, which includes the premium, fees for tracking the insurance, and a fee that is paid to First Data.  The mailings also included a Verification Form, which gave Plaintiffs the option of providing proof of their own insurance or enrolling in First Data's Equipment Protection Program.  Plaintiffs were instructed to complete the Verification Form and return it to an address in Coral Springs, Florida.

2

For instance, as alleged in the Complaint, after entering into a lease agreement with First Data, customers receive a welcome letter that states the following:

> In order to help you comply with your lease agreement terms, which require you to maintain property insurance on the equipment, an insurance program has been arranged through Great American Insurance Company that offers **no deductible** coverage for as low as $4.95 a month. This program provides greater coverage than normally found in a standard commercial property policy, and provides you with an efficient means for replacement should the equipment be lost, stolen, destroyed, or damaged.
>
> **THE INSURANCE CHARGE INCLUDES PREMIUM, FEES FOR TRACKING THE INSURANCE, AND ADMINISTRATION EXPENSES (INCLUDING A FEE PAYABLE TO THE LEASING COMPANY). . . .**
>
> **Contact FDGL Insurance Department . . . to authorize your insurance today, or complete the enclosed Acceptance Form and Mail or Fax it back . . . .**
>
> (Emphasis in original.) ¶11.

Included with this first welcome letter is a separate Insurance Verification Form (hereinafter "Verification Form"), as well as a tri-fold brochure explaining First Data's Equipment Protection Program (hereinafter "Brochure"). Plaintiffs further allege that the Verification Form, which is to be filled out and signed by the customer and returned to FDGL,[2] requests the customer to select one of following two options:

> **YES**, I elect to have my equipment insured under First Data's insurance policy, arranged by Great American Insurance Company, as described below.
>
> **NO**, I am providing a Certificate of Insurance as evidence of my own insurance that meets the requirements of my lease agreement, which I have attached to my response.
>
> (Emphasis in original.) ¶12.

---

[2] "FDGL" refers to First Data Global Leasing.

In addition to the first welcome letter, the Verification Form, and the Brochure, FDGL also sends customers a second welcome letter, which contains information regarding the lease, such as the term, the monthly payment, the equipment leased, and the first payment date. Enclosed with the second welcome letter are additional copies of the Brochure and Verification Form. The second welcome letter also states the following:

> **<u>Per the terms of your lease agreement you are required to insure the equipment covered by the lease.</u>  FDGL offers coverage for you starting as low as $4.95 a month, fixed for the term of your lease. Simply sign the attached verification form and return it to us . . . .**

(Emphasis in original.) ¶15.

Plaintiffs allege that customers who do not provide proof of insurance are unknowingly automatically enrolled in First Data's Equipment Protection Program and have the monthly insurance fee debited from their bank accounts.  Furthermore, because of First Data's billing practices, the insurance coverage fees are hidden, and customers will not notice that they have been assessed additional insurance fees or premiums.

## III.   ARGUMENT

### A.    Legal Standard On A Motion To Dismiss

Motions to dismiss are generally viewed with disfavor. *See Freudenberg v. E*Trade Fin. Corp.,* 2010 U.S. Dist. LEXIS 46053 at *11 (S.D.N.Y. May 11, 2010). "In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party." *Intelligent Digital Sys., LLC v. Visual Mgmt. Sys., Inc.,* 683 F. Supp. 2d 278, 283 (E.D.N.Y. 2010) (citation omitted). A complaint need only allege "enough factual matter *(taken as true)*" to suggest that a violation occurred, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . ." *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 556 (2007) (citation omitted). The pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Id.* at 556. As here, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).[3] Since *Twombly,* the Supreme Court and lower federal courts have clarified that Federal Rule of Civil Procedure 8(a)(2) requires only that the defendant receive 'fair notice of what the . . . claim is and the grounds upon which it rests,'" and that "specific facts" need not be pleaded except under Rule 9. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007); *see DiPetto v. U.S. Postal Serv.,* 2010 U.S. App. LEXIS 14184 at *2 (2d Cir. July 12, 2010) ("While [s]pecific facts are not necessary, 'the statement must' give the defendant fair notice of what the claim is and the grounds upon which it rests.") (quoting *Erickson,* 551 U.S. at 93).[4]

---

[3]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949. Thus, *Iqbal* makes clear that, for elements of claims subject to Rule 8(a), *Twombly* requires more than pleading the "bare elements of [the] cause of action," but far less than the particularity of pleading required under Fed. R. Civ. P. 9(b). *See id.* at 1954.

[4]  *See also Wood v. Capital One Servs., LLC,* 2010 U.S. Dist. LEXIS 60662 at *4 (N.D.N.Y. June 18, 2010) ("a plaintiff need not plead specific facts. Where certain 'facts are peculiarly within the possession and control of the defendant, plaintiffs are not prevented from `pleading facts alleged upon information and belief.") (citing *Erickson, 551* U.S. at 93); *Phillips v. County of Allegheny,* 515 F.3d 224, 230-31 (3d Cir. 2008) (noting that in *Twombly,* "the Supreme Court never said that it intended a drastic change in the law, and indeed strove to convey the opposite impression . . . . The Supreme Court reaffirmed that Fed. R. Civ. P. 8 `requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and that this standard does not require 'detailed factual allegations.'").

**B.     Plaintiffs Have Adequately Stated a Claim for Violation of Florida Insurance Law**

Florida insurance code provides a remedy for injuries resulting from persons acting as insurers within the state without authorization.   *See* Fla. Stat. §§ 624.155, 624.401.  First Data's contention, that Plaintiffs' claim for violation of Florida insurance laws should be dismissed because Plaintiffs are residents of Idaho and Texas and lack standing, overlooks the monthly premiums Plaintiffs paid to First Data, an unauthorized insurer in Florida, and the fact that Defendants' wrongful conduct occurred in Florida.

Defendants' argument that Plaintiffs lack Article III standing because they have not alleged an injury is misplaced.  Plaintiffs suffered an injury simply by paying premiums and fees to an unauthorized Florida insurer as consideration for an illegal and unconscionable contract of insurance, a fact that was adequately alleged in the Complaint.  In *London v. Walmart Stores, Inc.*, 340 F.3d 1246 (2003), the Eleventh Circuit held that paying consideration for a contract of insurance that was illegal and unauthorized under Florida law constituted an injury *per se*, which gave an innocent insured Article III standing to pursue a claim against the insurer.  As in *London*, the Plaintiffs here have innocently paid consideration for illegal and unauthorized contracts of insurance and thereby have obtained Article III standing to pursue this claim.

Likewise, Defendants' argument that the claim must be dismissed because Plaintiffs are residents of Texas and Idaho reads requirements into the statute that simply are not there. Section 624.155 simply states: "*Any* party may bring a civil action against an unauthorized insurer if such party is damaged by a violation of s. 624.401 by the unauthorized insurer." (emphasis added).  First Data's contention that Plaintiffs must be Florida residents ignores the plain language of the statute, which provides that ***any*** party injured by an unauthorized insurer's violation of Section 624.401 may bring a claim.  In fact, Defendants have not, and cannot, cite to

any support for its proposed requirement that an injured party must be a Florida resident in order to assert a claim under Section 624.401.  To the contrary, under the statutes' plain language, the remedy provided for in Section 624.155 is triggered by an unauthorized insurer's conduct within the State of Florida and is in no way dependent on the residency of the injured party.

For instance, Section 624.401 of Florida's Insurance Code (the violation of which triggers the remedy in Section 624.155) states that "[n]o person shall act as an insurer, and no insurer or its agents, attorneys, subscribers, or representatives shall *directly or indirectly transact insurance,* **in this state** except as authorized by a subsisting certificate of authority . . . ." (emphasis added).  By statutory definition, "transacting" insurance includes:  solicitation or inducement, preliminary negotiations, effectuation of a contract of insurance, and transaction of matters subsequent to effectuation of a contract of insurance and arising out of it. Fla. Stat. Section 624.10.  Thus, a plaintiff may avail itself of Section 624.155 where the defendant has acted as insurer or directly or indirectly solicited, induced, negotiated, or effectuated a contract of insurance, or transacted matters subsequent to the effectuation of the contract in the State of Florida.

Not only is there no residency requirement, but the statute specifically contemplates that a party injured by an unauthorized Florida insurer may, in fact, be a resident of another state or country. For example, Section 624.401 provides that "[n]o insurer shall *from offices or by personnel or facilities located in this state* solicit insurance applications or otherwise transact insurance *in another state or country* unless it holds a subsisting certificate of authority issued to the insurer by the [Florida Office of Insurance Regulation]"  Fla. Stat. Section 624.401(2) (emphasis added).

Finally, Defendants' argument also overlooks the general principle that non-residents are permitted to bring claims under a particular state's statute when the alleged misconduct occurred

7

within that state. *See, e.g., State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288 (S.D.Fla. 2005) (allowing California UCL claims by non-Californians to proceed when defendant was located in California and wrongful conduct occurred in California).

Plaintiffs have alleged sufficient facts to support the claim that First Data violated Section 624.401 by acting as insurer and transacting insurance, either directly or indirectly, within the State of Florida without authorization from the Florida Office of Insurance Regulation.  For example, First Data's solicitations regarding First Data's Equipment Protection Program are sent from an address in Coral Springs, Florida. ¶19.  Likewise, merchants wishing to enroll in the Equipment Protection Program are instructed to complete an acceptance form and mail it to a Florida address. ¶19.  Finally, it appears that First Data has substantial offices and facilities located within Florida, from which its personnel solicit, induce, process, and effect coverage under the Equipment Protection Program.  *Id*. These facts, along with the fact that Plaintiffs made monthly payments to an unauthorized insurer, are more than enough to support a claim for violation of the Florida Insurance Code, and Defendants' motion to dismiss this claim should be denied.

### C.    Plaintiffs Have Adequately Stated A Claim For Violation Of New York Insurance Law

New York courts have long recognized that agreements made in violation of law are unenforceable.  Moreover, where one of the parties to an illegal contract is innocent of wrongdoing, courts have allowed that party to seek rescission based on the illegal conduct of the other party.  *See, e.g., Atkin v. Hill, Darlington & Grimm,* 15 A.D.2d 362, 224 N.Y.S.2d 553, 554–58 (1962) (permitting stock purchaser to rescind purchase on ground that seller violated New York law), *aff'd,* 12 N.Y.2d 940, 238 N.Y.S.2d 516, 188 N.E.2d 790 (1963); *Barna v.*

*Clifford Country Estates, Inc.,* 143 Misc. 813, 258 N.Y.S. 671, 674–75 (City Ct. 1932) (permitting insurance purchaser to rescind policy on ground that seller violated New York law); *Robinson v. Mutual Reserve Life Ins. Co.,* 182 F. 850, 857 (S.D.N.Y.1910) (permitting insureds to rescind policies on ground that insurer violated New Jersey law), *aff'd,* 189 F. 347 (2d Cir.1911).

Under New York Insurance Law § 1102 it is illegal for any person to conduct an insurance business in New York (which includes making, or proposing to make, as insurer, any insurance contract) unless authorized by a license in force pursuant to the provisions of this chapter. *See also* N.Y. Ins. Law § 1101(b)(1). Failure to obtain a license subjects the unauthorized insurer to a statutory penalty as well as "any other penalty provided by law." N.Y. Ins. Law § 1102(a).[5]

In New York, rescission continues to be a remedy available to innocent parties who have entered into contracts of insurance with unlicensed and unauthorized insurers. *See Dornberger v. Metropolitan Life Ins. Co*, 961 F. Supp. 506 (S.D.N.Y. 1997); *see also* 22 N.Y. Jur.2d Contracts § 209 (stating that "[w]henever a statute imposes a penalty upon one party and not upon the other ... the innocent party may recover as upon an implied assumpsit against the party

---

[5] First Data's contention that this claim should be excluded on the basis that the statute already prescribes monetary penalties overlooks the fact that these fines are "*in addition to* any other penalty provided by law." Moreover, even if the statute did not include such broad enforcement powers, Plaintiffs' claim would still be consistent with the statute's purposes and could, therefore, be pursued. The Second Department has rejected a strict rule that would exclude all private causes of action wherever the statute provides for an official enforcement mechanism, opting instead for a rule that looks to whether a private right of action could "further a legislative goal and coalesce smoothly with the existing statutory scheme." *AHA Sales, Inc. v. Creative Bath Prods., Inc.,* 58 A.D.3d 6, 15–16, 867 N.Y.S.2d 169 (2d Dept. 2008) (overruling *Carrube v. New York City Transit Authority,* 291 A.D.2d 558, 738 N.Y.S.2d 67 (2d Dept. 2002)). However, such an analysis is unnecessary where, as here, the statute expressly provides for additional enforcement mechanisms.

prohibited or upon whom the penalty is imposed for any money or property which he has advanced upon such contract").

For example, in *Dornberger*, a United States District Court discussed rescission of unauthorized insurance contracts in great detail, holding that an insurance policy issued in violation of licensing laws was voidable at the option of the innocent insured. *Id* at 538. The court reasoned that rescission is appropriate where the insurer has violated a licensing statute that is designed to regulate the merits and subject matter of the transaction (as opposed to situations where a licensing statute is designed merely to raise revenue). *Id* at 534-535.  Citing *Atkin,* the court reasoned that a licensing statute requiring the Superintendent of Insurance to inquire into the financial condition and affairs of the insurer goes to the merits of the insurance contract. *Id.* at 534. Moreover, the court reasoned that statutes affect the merits of the transaction when they are concerned with public welfare or are designed to ensure the fairness of the transaction by providing an official and impartial judgment that the transaction is at least rational. *Id*. For example, the insurance statutes allegedly violated in *Dornberger*  constituted proper grounds for rescission where they required insurers to maintain solvency margins; obtain approval of policy language and premium rates; submit information as to the nature of risks, policy conditions, and solvency margins; and maintain sufficient reserves. *Id* at 535.

In this case, the licensing requirements of New York Insurance Law § 1102 regulate the merits of the insurance contract, and an insurer's violation of these requirements constitutes proper grounds for rescission. This section is not merely designed to generate revenue; rather, it requires, *inter alia*, that the Superintendent of Insurance approve of the financial condition and affairs of applicants. *See* N.Y. Ins. Law §1102(e). Furthermore, under Article 41 of New York's Insurance Laws, property and casualty insurance companies must meet certain financial requirements and make requisite deposits prior to being licensed to engage in the business of

10

property/casualty insurance. *See* N.Y. Ins. Law §4101 *et seq*.  As was the case in *Dornberger* and *Atkins*, these licensing requirements are designed to protect potential purchasers of insurance, not merely to raise revenue, and, when violated, constitute proper grounds for the innocent insured to rescind the contract.  Because of First Data's failure to comply with these material requirements, Plaintiffs are entitled to seek rescission of their policies.

Furthermore, the cases relied upon by First Data are non-binding, inapposite, and do not affect the general rule that an innocent party is entitled to rescind an illegal insurance contract. For example, *3405 Putnam Realty Corp. v. Chubb Custom Insurance Co*., 788 N.Y.S.2d 64 (N.Y. App. Div. 2005), the only published case addressing an insurer's alleged violation of Section 1102,[6] did not involve rescission of the illegal contract at all.  Rather, the plaintiff sought a form of relief that would have involved effectively rewriting the policy to require the insurer to provide coverage beyond what was contained in the original contract.  *Id.* The court found that the insurer had *not* violated the licensing statute but reasoned, in dicta, that even if it had, the alleged licensing violation would not support the extraordinary, previously unrecognized penalty proposed by the insured. *Id.*

Similarly, the other, unpublished decision relied on by Defendants, *Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co*., merely addressed the Superintendent's right to bring an action under Section 109 to *recover* a money penalty imposed by law, which is not at issue in this case (i.e., Plaintiffs have not asserted a right to recover the money penalties imposed by Section

---

[6] *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp*., No. 06 CIV. 4624(PKL), 2008 WL 1910503 (S.D.N.Y. Apr. 30, 2008) ostensibly addressed an alleged violation of Section 1102. However, the court merely cited the dicta in *Putnam* to dismiss plaintiff's claim and did not analyze whether a violation of Section 1102 went to the merits of the transaction, despite recognizing a need to do so.

1102).  Nos. 08-CV-00494, 541, 566, 583(A)(M), 2009 WL 910969 (W.D.N.Y. Mar. 31, 2009).

Rather, like *Putnam*, *Jim Mazz Auto* does not involve rescission, does not involve a violation of

Section 1102, and does not alter the longstanding rule reiterated in *Dornberger*, i.e., that an

illegal contract is voidable and can be rescinded at the option of the innocent party.

Because First Data's failure to obtain a license went to the merits of the insurance

transactions, Plaintiffs may seek rescission on these grounds.

### D.        Plaintiffs Have Pled Fraud With Particularity

According to this Court in *Intelligent Digital Sys.,* 683 F. Supp. 2d at 286:

> *Rule 9(b) of the Federal Rules of Civil Procedure* ("Rule 9") requires that in
> "all averments of fraud or mistake, the circumstances constituting fraud or
> mistake shall be stated with particularity." *Fed. R. Civ P. 9(b).* States of mind
> such as malice, intent or knowledge may be generally averred. *Id.* Complaints
> alleging fraud are required to: (1) state the statements that the plaintiff contends
> were fraudulent, (2) identify the speaker, (3) state where and when the
> statements were made, and (4) explain why the statements were fraudulent.
> (Citations omitted)

While the Court noted that the standard imposed by Rule 9 is high, it stressed that the

Second Circuit "does not require the pleading of 'detailed evidentiary matter.'" *Id.* quoting *In re*

*Scholastic Corp. Sec. Litig.,* 252 F.3d 63, 72 (2d Cir. 2001). In accord with this well-established

principle of law, Plaintiffs have alleged in exacting detail sufficient facts putting Defendants on

notice of the alleged fraud and thereby easily satisfying Rule 9(b).  Plaintiffs have identified the

specific statements and omissions that Plaintiffs countered were false and misleading and form

the basis of Plaintiffs' fraud claim.  ¶¶11-16.  Plaintiffs further identified the author of these

materials, First Data Corp. and First Data Merchant Services.  Plaintiffs further identified when

and where the false statements and omissions were made – Defendants' lease application, letters

12

and verification form.[7]  Specifically, the Complaint alleges that **subsequent to entering into a lease agreement with First Data**, customers receive a welcome letter which, among other things, explains the benefit of First Data's "insurance program." ¶11.  As represented by Defendants, First Data offers no deductible coverage for as low as $4.95 a month, and the customer can "contact FDGL Insurance Department . . . to authorize your insurance today, or complete the enclosed Acceptance Form and mail or fax it back."  ¶11.  The Complaint also identified the Verification From which is to be filled out by each customer to either 1) elect the coverage, or 2) decline the coverage and provide their own certificate of insurance.  ¶12.

Plaintiffs have also explained in detail why the statements were false and misleading.  In particular, Plaintiffs have alleged specific facts demonstrating that while Defendants were representing to customers in various letters and brochures that First Data was offering insurance protection coverage for the leased equipment, Defendants' failed to disclose key material facts which rendered their uniform statements false and misleading.  In particular, Defendants failed to disclose that neither First Data nor First Data Merchant Services is licensed, in any state, to engage in the business of insurance.  ¶¶30-31, 34-37.[8]  Plaintiffs have further alleged that First Data conducts business related to the Equipment Protection Program and other similar programs from Florida and/or New York.  For instance, the various letters and verification sent to

---

[7]   Beyond these well-pled allegations, the Complaint also cites, refers to, and incorporates by reference the various materials sent to Plaintiffs both prior to and subsequent to the entering of the lease agreement with Defendants.

[8]   Defendants neither contest, nor offer any evidence to the contrary, that "Defendants conduct business related to the Equipment Protection Program and/or similar programs from locations in Florida and/or New York.  Compl. ¶19" and Defendants did not have a certificate, authority or were licensed to engage in the business of insurance within the States of Florida and New York. Def. Br. at 2-3.

customers, **after they sign the lease agreement**, are sent from an address in Coral Springs, Florida and instruct customers to direct replies to the same address.  ¶19.  Similarly, Defendant have substantial facilities in New York (in particular this District) and many of the services provided to customers relating to their equipment protection program are provided from these facilities.  *Id*.  The fact that Defendants seek to provide numerous insurance-related services to Plaintiffs and First Data customers from Florida and New York, without any license to conduct insurance-related businesses from these states (or any other), renders their statements regarding First Data's equipment insurance coverage false and misleading.  ¶¶19, 20.

Equally important, Plaintiffs have alleged that Defendants failed to disclose that customers will be automatically enrolled in First Data's Equipment Protection Program and that fees will unknowingly be debited from customer accounts, regardless of whether the customer has actually enrolled in the program.  Furthermore, due to First Data's billing practices, the insurance coverage fees are hidden, and customers will not notice that they have been assessed these additional insurance coverage fees or premiums.  Customers do not receive separate invoices for equipment insurance payments.  Rather, these lease payments are made in conjunction with debiting of fees under the customer's payment processing agreement, through which First Data has access to the customers' bank accounts.  However, Defendants do not provide customers with itemized statements that indicate to their customers whether a portion of the monthly debit is attributable to the equipment insurance fees.  These fees and premiums are designed to go unnoticed.  ¶25.

### 1.    Plaintiffs Have Alleged Facts Giving Rise To A Strong Inference Of Scienter

The requisite state of mind in 10b-5 claims is "intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Manor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citation omitted).  The

Second Circuit has provided at least five non-exclusive examples of how a plaintiff may adequately plead scienter – namely, allegations that the defendants:  "(1) benefitted in a concrete and personal way from the purported fraud . . .; (2) engaged in deliberately illegal behavior . . .; (3) knew facts or had access to information suggesting that their public statements were not accurate . . .; or (4) failed to check information they had a duty to monitor," *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000); or (5) "ignored obvious signs of fraud." *Id.* at 308.  *See also Chill v. General Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) ("An egregious refusal to see the obvious, or to investigate the doubtful, may . . . give rise to an inference of . . . recklessness.") (citations and quotations omitted).

The inquiry on scienter "*is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.*"  *Tellabs*, 551 U.S. at 322-323 (underlined emphasis omitted; bold added).[9]  "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* at 324 (citations omitted).  An inference "at least as likely as competing inferences" warrants recovery. *Id.* at n. 5.  *See also City of Brockton Ret. Sys. v. Shaw Group, Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008) ("the 'tie . . . goes to the plaintiff'").

---

[9]  *See also In re MoneyGram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947, 983 (D. Minn. 2009) ("Despite the shortcomings of some of lead plaintiff's additional allegations of scienter, the court determines that, in consideration of the totality of the circumstances . . . a reasonable person could find [] plaintiff's fraud narrative to be cogent and as plausible as defendants' opposing nonfraudulent narrative.")

### 2.    Defendants Were Aware Of Facts And/Or Had Access To Information That Contradicted Their Public Statements

Plaintiffs have met the scienter requirement here by adequately pleading that Defendants "knew facts or had access to information suggesting that their public statements were not accurate." *Novak*, 216 F.3d at 311.  Such "allegations alone are enough to satisfy the pleading requirement for scienter." *Heller v. Goldin Restructuring Fund, LLP*, 590 F. Supp. 2d 603, 622 (S.D.N.Y. Dec. 22, 2008) (Defendants' knowledge of undercapitalization that contradicted their public statements alone satisfied scienter).

It is indisputable that Defendants were soliciting and charging customers for equipment insurance coverage through the various letters and brochures that are sent to newly enrolled First Data customers. *See* ¶¶11-16. It is further indisputable that Defendants had knowledge that it was debiting customer accounts for the insurance fee or premium, without disclosing those charged fees in an itemized monthly invoice.  Similarly, it is indisputable (as acknowledged by Defendants) that Defendants had full knowledge that they are not licensed to engage in the business of insurance in Florida, New York or any other state.  Def. Br. at 2-3.  Defendants' making of their statements, regarding their Equipment Protection Program and ability to provide equipment insurance, demonstrates that the statements were made with knowledge and/or in reckless disregard for the truth.  These well-pled allegations adequately plead scienter as required by Rule 9(b).

### 3.    The Complaint Adequately Pleads Defendants' Concrete Benefit

Although personal pecuniary motive is not required to plead scienter, *see Tellabs* 551 U.S. at 325, Defendants' motive to generate fees supports an inference of scienter.  *See Novak*, 216 F.3d at 307 (motive includes any "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged"); *In re EVCI Colls. Holding Corp.*

*Sec. Litig.*, 469 F. Supp. 2d 88, 99 (S.D.N.Y. 2006) ("Scienter can be alleged in two ways: by pleading facts that evidence conscious misbehavior or recklessness or by pleading facts that evidence defendant's motive and opportunity to commit fraud").

Plaintiffs' scienter allegations as to motive and opportunity are equally compelling. It cannot be disputed that Defendants had the opportunity to engage in the alleged fraud. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 651 F. Supp. 2d 155, 180 (S.D.N.Y. 2009). All of the alleged false and misleading statements were authored, issued and disseminated by the Defendants. ¶¶11-16. Moreover, Plaintiffs alleged a wealth of detailed facts demonstrating that Defendants had sufficient motive to commit the alleged fraud. As detailed in the Complaint, by charging First Data customers an additional $4.95 or more per month to have the inexpensive piece of equipment insured, Defendants have the ability to generate exorbitant amounts of additional fees in connection with their equipment protection program. ¶24. In fact, as detailed in the Complaint, when adding up all of the fees incurred by customers (including the hidden fees or junk fees for the equipment protection insurance) over the course of the lease, "many customers end up paying $7,000 or more to lease a piece of equipment that had a retail value of $350 or less."[10] ¶24. This program, which was implemented on a class-wide basis, was designed to line the pockets of First Data and its affiliates at the expense of its customers and again provides sufficient detailed allegations of Defendants' scienter.[11]

---

[10]   Both Plaintiffs allege with specificity the terms of their lease and the amounts paid as of the date of filing the Complaint and to be paid through the entirety of the lease. Specifically, Plaintiff Taylor has paid at least $1,799 in lease payments and will ultimately pay $7,199.12 for entire 48 month term of the lease. ¶3 Similarly, Plaintiff Linscott has paid $987 as of the date of the filing and will ultimately pay $2,256 for the entire 48 month term of the lease. ¶4.

[11] Defendants' citation of *Lefkowitz v. Bank of N.Y.*, 676 F. Supp. 2d 229 (S.D.N.Y. 2009) provides no basis for dismissal of Plaintiffs' fraud claim. Unlike *Lefkowitz*, in which the plaintiff

### 4.      Plaintiffs Have Adequately Pled Reliance

Plaintiffs' reliance allegations are adequate.  *See In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d at 490 (S.D.N.Y. 2006):

> Reliance, or transaction causation, "requires only an allegation that 'but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction.'" *Lentell*, 396 F.3d at 172 (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)).

As Defendants acknowledge, Plaintiffs in ¶¶41-42 of the Complaint plead reliance ("Defendants made these various false statements of material fact to Plaintiffs and members of the Plaintiff Class knowingly and willfully and with the intent that they be relied upon" and "Plaintiffs and members of the Plaintiff Class justifiably relied on these false statements and, as a direct <u>and</u> proximate result, have been damaged.").  Def. Br. 9-10.  Moreover, the Complaint alleges that both Plaintiffs entered into a 4-year non-cancellable lease which has and will require them to pay thousands of dollars in fees.  Both Plaintiffs further alleged that they entered into these leases, to their financial detriment, and filled out the verification form in direct reliance on Defendants' misstatement and omissions.  ¶¶3-4.  As this Court held in *State Farm Mut. Auto Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 221 (E.D.N.Y. 2009):

> Here, plaintiff properly alleges a claim of common law fraud, as contemplated by Mallela.  Plaintiff alleges that the Laufer defendants knowingly made a material misrepresentation that Milan was properly incorporated by a medical doctor and entitled to payment from plaintiff, when, in fact, it was not, with the intention that plaintiff would reimburse the Laufer defendants. Plaintiff allegedly relied on this

---

failed to offer *any* allegation that the bank had motive to follow the alleged procedure, the Plaintiffs in the present case have alleged that the unlawful debiting of monthly fees, based on an unlawful insurance program, provided Defendants with additional exorbitant fees beyond what they were already receiving pursuant to their POS lease agreements.  These allegations clearly provide a plausible explanation for Defendants' motive to commit the alleged fraudulent conduct.

representation and such reliance caused "damages of more than $1,000,000." Insofar as the claim against the Laufer defendants is limited to fraudulent incorporation, no further specification is required.

…

[I]t is adequate that plaintiff alleges it has incurred "damages of more than $1,000,000" from reliance on "false or fraudulent misrepresentations" of the Laufer defendants.

Accordingly, Plaintiffs' allegations of reliance are more than sufficient.

## E.      Declaratory Relief Is Warranted

Defendants seek dismissal of Plaintiffs' declaratory relief claim on the grounds that 1) Plaintiffs have failed to adequately allege Counts I, II, and III, and 2) Plaintiffs have no standing to seek declaratory relief.  Both of Defendants' arguments fail.

As discussed in detail above, Plaintiffs have sufficiently alleged facts to support their claims under Counts I, II and III.  Nevertheless, this Court has discretion to enter a declaration regarding the lawfulness of Defendants' Equipment Protection Program.  As the Second Circuit held in *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005):

> The Declaratory Judgment Act, by its express terms, vests a district court with discretion to exercise jurisdiction over a declaratory action: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). In order to decide whether to entertain an action for declaratory judgment, we have instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. See *Broadview Chem. Corp. v. Loctite Corp*., 417 F.2d 998, 1001 (2d Cir. 1969).

Thus, notwithstanding the fact that Plaintiffs asserted claims under the Florida and New York Insurance Laws and for fraud, this Court has discretion to declare the legal rights of Plaintiffs with regard to the lawfulness of Defendants' Equipment Protection Program.  Certainly, a declaration as to whether or not Defendants were legally entitled to 1) provide insurance

19

coverage for the leased equipment, or 2) obtain fees, through First Data's Equipment Protection Program without being licensed to engage in the business of insurance will "serve a useful purpose in clarifying" Plaintiffs' rights and extinguish all uncertainty regarding the lease agreement.

Additionally, Defendants' argument that Plaintiffs lack standing is equally baseless. As alleged in Plaintiffs' Complaint, each Plaintiff entered into a 48-month equipment lease with Defendants. Those leases were entered into in November 2010 (Plaintiff Linscott) and September 2011 (Plaintiff Taylor) and as such, Plaintiffs are still under a lease agreement with Defendants to pay these unlawful fees, including the equipment protection fee. Because Plaintiffs are still suffering injuries as a result of Defendants' misconduct and will continue to suffer future injuries, they have adequate standing to pursue declaratory relief.

### F.   Plaintiffs Have Properly Pled A Cause Of Action For Unjust Enrichment

As this Court stated in *Mgr Meats, Inc. v. Schweid*, 2012 U.S. Dist. LEXIS 181481, at *15-17 (E.D.N.Y. Dec. 21, 2012).

> To prevail on a claim for unjust enrichment [under] New York [law], a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Cir. v. Horizon Blue & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *see also Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, 973 N.E. 2d 743, 950 N.Y.S.2d 333 (2012) (outlining the unjust enrichment test). "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered[.]" *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16, 863 N.E.2d 1012, 831 N.Y.S.2d 760 (2007) (alteration omitted) (quoting *Paramount Film Dist. Corp. v. State of New York*, 30 N.Y.2d 415, 421, 285 N.E.2d 695, 334 N.Y.S.2d 388 (1972)).

Defendants challenge Plaintiffs' unjust enrichment claim on the grounds that 1) Plaintiffs have not alleged facts challenging the existence of a valid contract between Plaintiffs and Defendants, and 2) Plaintiffs do not allege that any benefit to Defendants was bestowed at

Plaintiffs' expense.  Defendants' arguments are both legally and factually misplaced.  As this

Court held in *Mgr Meats*, Plaintiffs can pursue an unjust enrichment claim despite the existence

of a valid contract, "if there is no valid contract that pertained to the disputed issues."  *Id*. at 16.

According to this Court:

> [I]f there is no valid contract that pertains to the disputed issues, a plaintiff may
> proceed under an unjust enrichment theory.  *Bank Midwest, N.A. v. Hypo Real
> Estate Capital Corp.*, No. 10-CV-232, 2010 U.S. Dist. LEXIS 114440, 2010 WL
> 4449366, at *4 (S.D.N.Y. Oct. 13, 2010) ("[A] plaintiff may proceed on a theory
> of unjust enrichment despite the existence of a valid contract where 'the contract
> does not cover the dispute in issue.'"  (quoting *Mid—Hudson Catskill Migrant
> Ministry, Inc. v. Fine Hosp. Corp.*, 418 F.3d 168, 175 (2d Cir. 2005))); *see also
> Hildene Capital Mgmt. LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11-
> CV-5832, 2012 U.S. Dist. LEXIS 115942, 2012 WL 3542196, at *10-11
> (S.D.N.Y. Aug. 15, 2012) ("[A] claim of unjust enrichment cannot be sustained if
> a valid contract governs the relevant subject matter, even against a non-signatory
> to the contract . . . [however,] [i]f the contract does not cover the dispute in issue,
> a plaintiff may proceed on a theory of quantum meruit as well as contract.").  *Id.*

Contrary to Defendants' argument, Plaintiffs have alleged specific facts demonstrating

that the provisions contained in the letter agreements and verification form, regarding the

Equipment Protection Program, were null and void.  In particular, Plaintiffs have alleged that

Defendants had no lawful licenses or authority to provide equipment protection coverage to

Plaintiffs, and as such any provision relating to such insurance would be unlawful.  Since the

Defendants had no license to engage in the business of equipment insurance, the provisions

regarding Defendants' equipment insurance were null and void.  It would be inequitable for

Defendants to retain the profits, benefits, and other compensation by them from their wrongful

conduct.[12]

---

[12]  Defendants challenge Plaintiffs' unjust enrichment claim on the ground that Plaintiffs have
only made a "conclusory allegation" that the contract between Plaintiffs and Defendants is
invalid.  Def. Br. at 13.  However, unlike the case relied upon by Defendants, *Poplar Lane Farm
LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011), Plaintiffs have

Moreover, Plaintiffs have alleged that the Defendants received a substantial benefit and unjustly retained that benefit at their expense.  Plaintiffs alleged that Defendants have wrongfully been charging and receiving unconscionable "Junk fees" from Plaintiffs and the Class.  ¶22. Defendants wrongfully and unlawfully debited these undisclosed insurance fees which amounted to charges well in excess of the value of what was received by the Plaintiffs.  ¶¶3-4, 23-24.  In light of these well-pled facts, Plaintiffs have sufficiently alleged a cause of action for unjust enrichment because the lawfulness of the contract between Plaintiffs and Defendants is clearly in dispute.

Defendants' reliance on *State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C.*, 2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. Sept. 5, 2008) and *Universal Acupuncture Pain Servs. v. State Farm Mut. Auto Ins. Co.*, 196 F. Supp. 2d 378 (S.D.N.Y. 2002) is misplaced.  In both *CPT* and *Universal Acupuncture*, the courts rejected plaintiffs' unjust enrichment claims, notwithstanding the lack of a required license, because both courts found that the plaintiffs did in fact receive benefits for the services rendered.  In fact, contrary to Defendants' argument, this Court in *CPT* held that in a case where plaintiffs alleged that no benefit was received, reimbursement of monies under an unjust enrichment claim is proper.  According to this Court:

> Accepting the allegations as true, reimbursement of the monies paid for them is not precluded by the regulation and arguably not precluded by *Mallela*.  To permit, for example, a placebo having no medical or therapeutic value whatsoever to be provided under the guise of medical or therapeutic necessity in alleged accordance with accepted medical practice, conferring no benefit whatsoever on

---

offered much more than mere conclusory allegations.  Specifically, in *Poplar*, where the Circuit Court affirmed the dismissal of plaintiffs' breach of contract claim as meritless, conclusory and abandoned in the district court (*id.*), Plaintiffs in the present case have offered much more than mere conclusory allegations.  As detailed above, Plaintiffs have alleged facts demonstrating a genuine dispute regarding the equipment protection provision.  As such, the principle sought to be enforced by Defendants "does not apply 'where there is a bonafide dispute.'"  *Id.*

the patient, is to permit the provider of that placebo to be unjustly enriched by the monies paid for it and would be neither good logic nor good law.  *CPT*, 2008 U.S. Dist. LEXIS, at *28.

In the present case, Plaintiffs have alleged that Defendants had no authority to provide insurance coverage for the leased point of sale equipment.  Furthermore, Plaintiffs allege that First Data does not have any real risk exposure or need to impose an insurance requirement because the average customer's monthly lease payment and insurance fee/premium are already *grossly* disproportionate to the actual value of the equipment and the incremental cost of insuring the equipment. Given that there is absolutely no evidence that Defendants provided any legitimate benefit to Plaintiffs, consistent with the Court's holding in *CPT*, Plaintiffs are entitled to full restitution and/or disgorgement of all profits, benefits, and other compensation obtained by Defendants due to their improper retention of Plaintiffs' money.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss should be denied in its entirety.

Dated: March 18, 2013

Respectfully submitted,

**WeissLaw LLP**


/s/ James E. Tullman
Joseph H. Weiss
James E. Tullman
David C. Katz
1500 Broadway, 16th Fl.
New York, New York 10036
Telephone:    (212) 682-3025
Facsimile:    (212) 682-3010

Jeffery J. Crandall
Ryan J. Crandall
**OWENS & CRANDALL, PLLC**
8596 N. Wayne Dr., Ste. A
Hayden, Idaho 83835
Telephone:     (208)   667-8989
Facsimile:     (208)   667-1939

Attorneys for Plaintiffs