UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
CLAYTON'S AUTO GLASS, INC., LAURA
TAYLOR, LINSCOTT LAW FIRM, PLLC,
APRIL M. LINSCOTT, individually and on
behalf of all others similarly situated,

                         Plaintiffs,        <u>MEMORANDUM & ORDER</u>
                                         12-CV-5018(JS)(AKT)

      -against-

FIRST DATA CORPORATION, FIRST DATA
MERCHANT SERVICES CORPORATION, DOES
1-25, inclusive,

                         Defendants.
--------------------------------------X
APPEARANCES
For Plaintiffs:     David Corey Katz, Esq.
                   Joseph Harry Weiss, Esq.
                   James E. Tullman, Esq.
                   WeissLaw LLP
                   1500 Broadway, 16th Floor
                   New York, NY 10036

For Defendants:    Ellen Mary Dunn, Esq.
                   Robert D. Owen, Esq.
                   Sutherland Asbill & Brennan LLP
                   1114 Avenue of the Americas, 40th Floor
                   New York, NY 10036

                   Valerie S. Sanders, Esq.
                   Sutherland Asbill & Brennan LLP
                   999 Peachtree St. Ne
                   Atlanta, GA 30309

SEYBERT, District Judge:

        Clayton's Auto Glass, Inc., its President Laura

Taylor, Linscott Law Firm, PLLC, and its sole managing member

April Linscott (collectively "Plaintiffs") commenced this

purported class action on October 5, 2012 against Defendants

First Data Corporation ("FDC") and its subsidiary First Data Merchant Services ("FDMS", and together with FDC, "Defendants") as well as unnamed Does 1-25, asserting claims under New York and Florida insurance law and various common law claims. Pending before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For the following reasons, Defendants' motion is GRANTED.

<u>BACKGROUND</u>[1]

I.  <u>The Parties</u>

Plaintiff Clayton's Auto Glass, Inc. is a Texas corporation doing business in Texas.  (Compl. ¶ 3.)  Plaintiff Laura Taylor (together with Clayton's Auto Glass, Inc., "Clayton") is the president of Clayton's Auto Glass, Inc. and is also a resident of Texas.  (Compl. ¶ 3.)

Plaintiff Linscott Law Firm, PLLC is an Idaho professional limited liability company with its principal place of business in Idaho.  (Compl. ¶ 4.)  Plaintiff April Linscott (together with the Linscott Law Firm, PLLC, "Linscott") is the sole managing member of Linscott Law Firm, PLLC and also resides in Idaho.  (Compl. ¶ 4.)

---

[1] The following facts are taken from Plaintiffs' Complaint and are presumed to be true for the purposes of this Memorandum and Order.

Defendant FDC is a Delaware corporation that provides credit and debit card processing services with its principal place of business in Georgia.  (Compl. ¶ 5.)  FDMS, a subsidiary of FDC, is a Florida corporation that provides "additional services to merchants" with its principal place of business in Georgia.  (Compl. ¶ 6.)  Plaintiffs also name unknown Does 1-25 as defendants in this action.  (Compl. ¶ 7.)

II. <u>The Relevant Agreements</u>

Both Clayton and Linscott entered into non-cancellable, forty-eight month lease agreements with Defendants (the "Lease Agreements").  (Compl. ¶¶ 3-4.)  Clayton leased a desktop credit card processing terminal at a monthly rate of $149.99, and Linscott leased a desktop credit card processing terminal and a pin pad at a monthly rate of $47.00.  (Compl. ¶¶ 3-4.)  Plaintiffs entered into these Lease Agreements, notwithstanding the fact that they could have purchased the equipment from an office supply store for between $175 and $350. (Compl. ¶ 23.)[2]

Pursuant to the terms of the Lease Agreements, Plaintiffs bore the risk of loss for damage to the equipment. (Compl. ¶ 9.)  However, according to the Complaint, the Lease

_____

[2] Plaintiffs attribute their ignorance of the actual equipment costs to "the unfair and deceptive practices of First Data and other third-party sellers and independent sales organizations." (Compl. ¶ 23.)

Agreements "also purport to require customers to insure the equipment against loss by theft, fire, and all other hazards." (Compl. ¶ 9.)

After entering into the Lease Agreements, First Data Global Leasing ("FDGL")[3] sent Plaintiffs a welcome letter, which stated:

> In order to help you comply with your lease agreement terms, which require you to maintain property insurance on the equipment, an insurance program has been arranged through Great American Insurance Company that offers **no deductible coverage** for as low as $4.95 a month.  This program provides greater coverage than normally found in a standard commercial property policy, and provides you with an efficient means for replacement should the equipment be lost, stolen, destroyed, or damaged.
>
> **THE INSURANCE CHARGE INCLUDES PREMIUM, FEES FOR TRACKING THE INSURANCE, AND ADMINISTRATION EXPENSES (INCLUDING A FEE PAYABLE TO THE LEASING COMPANY) . . . .**
>
> **Contact FDGL Insurance Department . . . to authorize your insurance today, or complete the enclosed Acceptance Form and Mail or Fax it back . . . .**

(Compl. ¶ 11 (omissions in original).)  The included Acceptance Form, which was to be filled out and returned by Plaintiffs,

---

[3] First Data Global Leasing is not a party to this action. Rather, the Complaint describes the entity as a division of "First Data."  (Compl. ¶ 10.)  However, "First Data" is defined as "First Data Corporation, First Data Merchant Services, and their related entities" (Compl. ¶ 8).  Thus, the actual relationship of First Data Global Leasing to Defendants is somewhat unclear.

stated that "First Data Equipment Program provides FULL REPLACEMENT coverage" for specified types of loss and asked Plaintiffs to select one of the following two options:

> **YES**, I elect to have my equipment insured under First Data's insurance policy, arranged by Great American Insurance Company, as described below.

> **NO**, I am providing a Certificate of Insurance as evidence of my own insurance that meets the requirements of my lease agreement, which I have attached to my response.

(Compl. ¶ 12.)  Also enclosed was a brochure, titled "Equipment Protection Program" that explained the details of Defendants' insurance program.  (Compl. ¶¶ 11, 13-14.)  FDGL sent additional letters thereafter emphasizing much of the same information. (Compl. ¶¶ 15-16.)  All of the mailings had a return address from Coral Springs, Florida and instructed customers to direct replies to that address.  (Compl. ¶ 19.)

The Complaint asserts that those who did not provide proof of insurance became automatically enrolled in FDGL's Equipment Protection Program and unknowingly had the monthly insurance fee debited from their bank accounts.[4]  (Compl. ¶ 21.) It is unclear from the Complaint whether Plaintiffs were automatically enrolled or whether they elected to participate in

---

[4] The Complaint asserts that the insurance fee is "hidden" because Defendants do not provide itemized invoices for their monthly fees while the total monthly cost often varies based on the number of transactions.  (Compl. ¶ 25.)

the Equipment Protection Plan.  Either way, Defendants ultimately debited from Plaintiffs' accounts additional monthly fees for their enrollment in the Equipment Protection Program (the "Insurance Contracts").  (Compl. ¶¶ 3-4.)  However, unknown to Plaintiffs at the time, Defendants were not authorized or licensed to provide insurance in any state.  (Compl. ¶ 20.)

Plaintiffs commenced this purported class action on October 5, 2012.  At the time of filing, Clayton had paid $1,799 and Linscott had paid $987 in lease payments in addition to monthly fees for the Equipment Protection Program.  (Compl. ¶¶ 3-4.)

## DISCUSSION

In their Complaint, Plaintiffs assert five claims for relief: (1) violation of Florida Insurance Law, (2) violation of New York Insurance Law, (3) fraud, (4) unjust enrichment, and (5) a separate cause of action for declaratory relief. Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court will first discuss the applicable standards of review before turning to the merits of Defendants' motion.

I.   Standards of Review

A.   Under Rule 12(b)(6)

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement

6

of the claim showing that the pleader is entitled to relief." Under the now well-established Iqbal/Twombly standard, a complaint satisfies Rule 8 only if it contains enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

This "plausibility standard," which governs motions to dismiss under Rule 12(b)(6), is governed by "[t]wo working principles." Iqbal, 556 U.S. at 670, 678; accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 (a pleading that offers "labels and conclusion" or "naked assertion[s]" devoid of "further factual enhancement" does not satisfy Rule 8). Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Id.; accord Harris, 572 F.3d at 72.

   B.   Under Rule 9(b)

   To state a claim sounding in fraud or mistake, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard:   "[A] party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).   The Second Circuit has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," in order to survive a motion to dismiss.   Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (internal quotation marks omitted).

## II. Florida Insurance Law

   Plaintiffs assert that Defendants violated Florida Statutes Section 624.401, which provides, in relevant part, as follows:

>   (1) No person shall act as an insurer, and no insurer or its agents, attorneys, subscribers, or representatives shall directly or indirectly transact insurance, in this state except as authorized by a subsisting certificate of authority issued to the insurer by the office, except as to such transactions as are expressly otherwise provided for in this code.

> (2) No insurer shall from offices or by
> personnel or facilities located in this
> state solicit insurance applications or
> otherwise transact insurance in another
> state or country unless it holds a
> subsisting certificate of authority issued
> to it by the office authorizing it to
> transact the same kind or kinds of insurance
> in this state.

FLA. STAT. § 624.401(1)-(2).  Plaintiffs seek relief in the form of monetary damages and a declaration that the Insurance Contracts are void or voidable under Florida Statutes Section § 624.155, which authorizes "[a]ny party [to] bring a civil action against an unauthorized insurer if such party is damaged by a violation of § 624.401 by the unauthorized insurer."  FLA. STAT. § 624.155(2).  Defendants argue that this claim fails because Plaintiffs have not alleged damages arising out of Defendants' failure to obtain proper certification.  The Court agrees.

First, although generally a contract in violation of a statute would be illegal and void, the Florida Supreme Court has explicitly held that an insurer's failure to comply with provisions of the insurance code does not render the policy void and unenforceable, unless the legislature specifically provided for such penalty.  See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So.3d 541, 554 (Fla. 2012); see also Lemy v. Direct Gen. Fin. Co., 885 F. Supp. 2d 1265, 1272 (M.D.

Fla. 2012).   Here, Section 624.155 does not provide for the voidability of an insurance contract with an unauthorized insurer.   Compare FLA. STAT. §§ 624.155, 624.401, with id. § 627.6474 ("Any contract provision that violates this section is void."), and id. § 627.415 ("Any policy provision in violation of this section is invalid.").   Therefore, Plaintiffs are not entitled a declaratory judgment that the Insurance Contracts are void.

Second, Plaintiffs have not otherwise pled damages resulting from Defendants' unauthorized status, which is required to bring a civil action under Section 624.155.   See FLA. STAT. § 624.155(2) ("Any party may bring a civil action against an unauthorized insurer if such party is damaged by a violation of § 624.401 by the unauthorized insurer." (emphasis added)). Plaintiffs argue that their insurance premiums constitute damages.   The Court disagrees.   "[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless."   Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 198-99 (Fla. 2007).   If insurance premiums constitute "damages" sufficient to state a claim under Section 624.155, as Plaintiffs suggest, then every individual that has entered into an insurance contract with an unauthorized provider in Florida would suffer damages, thereby

10

rendering the clause--"if such party is damaged"--meaningless. Accordingly, the Court does not adopt Plaintiffs' proposed reading of Section 624.155.  Instead, to state a claim under Section 624.155, Plaintiffs much allege some other injury arising out of Defendants' unauthorized status--such as a denial of insurance benefits.  As they have failed to do so here, Defendants' motion to dismiss these claims is GRANTED.[5]

III. New York Insurance Law

Plaintiffs also assert that Defendants violated Section 1102 of New York's Insurance Law, which provides as follows:

> No person, firm, association, corporation or joint-stock company shall do an insurance business in this state unless authorized by a license in force pursuant to the provisions of this chapter . . . .  Any person, firm, association, corporation or joint-stock company which transacts any insurance business in this state while not authorized to do so by a license issued and in force pursuant to this chapter . . . shall, in addition to any other penalty provided by law, forfeit to the people of this state the sum of one thousand dollars for the first violation and two thousand five hundred dollars for each subsequent violation.

---

[5] Plaintiffs cite to London v. Wal-Mart Stores, Inc., 340 F.3d 1246 (11th Cir. 2003), in support of their argument that their insurance premiums constitute an "injury per se."  (Pls. Opp. 6.)  However, London is inapposite here, as it was discussing constitutional standing, not what constitutes damages under Section 624.155.

N.Y. INS. LAW § 1102(a).  Plaintiffs seek a declaration that the Insurance Contracts are void/voidable and unenforceable. Defendants argue that Plaintiffs' claim fails because there is no private right of action for alleged violations of New York Insurance Law's licensing requirements.  The Court agrees, see, e.g., Soliman v. Daimler AG, No. 10-CV-0408, 2011 WL 765885, at *8 (E.D.N.Y. Feb. 9, 2011) ("[E]ven assuming [the defendant] was not licensed to sell insurance in New York, no private right of action exists in these circumstances under New York Insurance Law."), adopted by 2011 WL 1627009 (E.D.N.Y. Apr. 27, 2011); 3405 Putnam Realty Corp. v. Chubb Custom Ins. Co., 14 A.D.3d 310, 312, 788 N.Y.S.2d 64, 66-67 (1st Dep't 2005) ("[T]he weight of authority in New York holds that an insurance company's failure to comply with the licensing scheme of this state does not invalidate the insurance contract, but rather subjects the insurer to the available statutory penalties and sanctions that may be imposed by the Superintendent of Insurance."); cf. Quanta Specialty Lines Ins. Co. v. Investors Capital Corp., No. 06-CV-4624, 2008 WL 1910503, at *6 (S.D.N.Y. April 30, 2008) (stating that unlawful insurance policies are to be redressed by the Superintendent of the Insurance),[6] and GRANTS Defendants' motion to dismiss these claims.

---

[6] Section 109(d) of the Insurance Law empowers the Superintendent to "maintain a civil action in the name of the people of the

IV.   Common Law Claims

        Plaintiffs also assert claims for fraud and unjust enrichment arising under state law.  The Complaint does not, however, specify under which state's common law Plaintiffs are asserting their claims.  Nonetheless, the Court need not engage in a sua sponte choice-of-law analysis, as both parties apply New York common law in their papers.  See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." (omission in original) (internal quotation marks and citation omitted)).

    A.   Fraud

        Under New York law, a common law fraud claim has four elements:  "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."   Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995).

---

state to recover a judgment for a money penalty imposed by law for the violation of any provision of this chapter."

13

Plaintiffs' Complaint contains the following allegations with respect to Plaintiffs' fraud claim:

> 40. Defendants made false statements of material fact, including but not limited to, statements that equipment insurance could be purchased through First Data Global Leasing, statements that First Data will provide equipment insurance coverage for the merchant at a fixed monthly rate, and statements that the Equipment Protection Program provides full replacement coverage for several important types of loss, which representations were false and/or incomplete.
>
> 41. Defendants made these various false statements of material fact to Plaintiffs and members of the Plaintiff Class knowingly and willfully and with the intent that they be relied upon.
>
> 42. Plaintiffs and members of the Plaintiff Class justifiably relied on these false statements and, as a direct and proximate result, have been damaged in an amount as yet unknown.

(Compl. ¶¶ 40-42.)   Defendants argue, _inter_ _alia_, that Plaintiffs have failed to plead which of the defendants made the allegedly false statements and why those statements were false. (Defs. Mot. 8-9.) The Court agrees.

_First_, under the Rule 9(b) pleading standard articulated above, _see_ _supra_ Discussion Section I.B., Plaintiffs must specifically plead the circumstances constituting fraud with respect to each of the Defendants. _DiVittorio v. Equidyne_ _Extractive Indus., Inc._, 822 F.2d 1242, 1247 (2d Cir. 1987)

14

("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). Here, however, the Complaint refers to both defendants and their unnamed "related entities" collectively as "First Data" (Compl. ¶ 8); therefore, it is unclear which defendant made the statements referenced above. Such "'group pleading' fails to give each defendant fair notice of the claims against it," Holmes v. Allstate Corp., No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012), adopted by 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012), and, thus, fails to satisfy either the notice-pleading requirements of Rule 8 or the heightened pleading standard under Rule 9(b), see id. (stating that "group pleading" violates Rule 8); Mills, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); S.E.C. v. U.S. Envtl., Inc., 82 F. Supp. 2d 237, 241 (S.D.N.Y. 2000) (stating that a plaintiff cannot satisfy Rule 9(b) "by making vague allegations about the defendants as a unit").

    Second, the allegedly false statements[7] are only false if the Equipment Protection Program does not entitle customers

_____

[7] Plaintiffs assert in their opposition papers that Defendants' failed to disclose another key material fact: they were unlicensed to engage in the insurance business in any state. (Pls. Opp. 13.) While there may a duty to disclose during the

to the promised benefit, which Plaintiffs acknowledge in their Complaint (see Compl. ¶¶ 17-18 (pleading in the alternative that either (1) in exchange for a monthly fee, customers will be enrolled in the Equipment Protection Program and "will be entitled to full replacement insurance coverage" or (2) "[a]lternatively, if enrollment in the Equipment Protection Program or similar programs does not actually entitle the customer to any tangible benefits in the event of a loss . . . then the statements . . . are untrue and constitute fraud and/or intentional misrepresentation")). Rule 9(b) pleadings, however, cannot be based on speculation, see Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972) (stating that Rule 9(b) pleadings cannot be based "on information and belief" (citation omitted)), and, here, there are no allegations in the Complaint suggesting that Plaintiffs would not have received full replacement coverage in the event of a loss.

---

course of negotiations surrounding a business transaction, this duty only arises when the parties are in a fiduciary relationship or when one party knowingly possesses superior knowledge that is not readily available to the other. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291-92 (2d Cir. 2006). Here, Defendants had no duty to disclose their unlicensed status as the parties were not in a fiduciary relationship, nor was Defendants' unlicensed status exclusively in their possession, see FLA. OFFICE OF INS. REG., http://www.floir.com/CompanySearch/ (providing for a search of insurance companies authorized to do business in Florida); N.Y. DEP'T OF FIN. SERVS., https://myportal.dfs.ny.gov/nylinxext/elsearch.alice (providing a search for companies licensed to do business in New York).

Accordingly, the motion to dismiss Plaintiffs' fraud claims is GRANTED.

B. <u>Unjust Enrichment</u>

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." <u>Briarpatch, Ltd. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 306 (2d Cir. 2004); <u>see also</u> <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 471, 944 N.E.2d 1104, 1110 (2011). Defendants argue that Plaintiffs' claims are barred by the Insurance Contracts. The Court agrees.

"[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery [for unjust enrichment] for events arising out of the same subject matter." <u>U.S. E. Telecomms., Inc. v. U.S. W. Commc'ns Servs., Inc.</u>, 38 F.3d 1289, 1296 (2d Cir. 1994) (quoting <u>Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.</u>, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987)) (internal quotation marks omitted). Here, as the Court has already found that the Insurance Contracts are not void,

17

valid agreements governing the dispute exist and bar Plaintiffs'
claims for unjust enrichment.[8]

Further, "New York courts are reluctant to require the
return of sums previously paid, or even to void one party's duty
to perform under a contract for lack of a statutorily required
license." Universal Acupuncture Pain Servs. v. State Farm Mut.
Auto. Ins. Co., 196 F. Supp. 2d 378, 387 (S.D.N.Y. 2002); cf.
Lloyd Capital Corp. v. Pat Henchar, Inc., 80 N.Y.2d 124, 128,
589 N.Y.S.2d 396, 398, 603 N.E.2d 246, 248 (1992) ("Allowing
parties to avoid their contractual obligation is especially
inappropriate where there are regulatory sanctions and statutory
penalties in place to redress violations of the law.");
Charlebois v. J.M. Weller Assoc., Inc., 72 N.Y.2d 587, 595, 535
N.Y.S.2d 356, 360, 531 N.E.2d 1288, 1292 (1988) ("[F]orfeitures
by operation of law are strongly disfavored as a matter of
public policy.").  Here, Plaintiffs never made a claim to
replace equipment under the Equipment Protection Program and
provide no facts suggesting Defendants' enrichment other than
calling the monthly lease payment and insurance fees "**grossly**
disproportionate to the actual value of the equipment."  (Compl.

---

[8] "A voidable contract is valid and binding until it is avoided
by the party entitled to avoid it."  420 E. Assocs. v. Kerner,
81 A.D.2d 545, 546, 438 N.Y.S.2d 316, 318 (1st Dep't 1981).
Plaintiffs, however, have failed to adequately plead that they
sought to avoid the contract, or even that the contracts
themselves are voidable.

¶ 23.)   However, "[q]uantum meruit cannot be used by the Plaintiffs to question the adequacy of a bargain that Plaintiffs believe in retrospect to have been a poor one." Kreiss v. McCown De Leeuw & Co., 131 F. Supp. 2d 428, 445 (S.D.N.Y. 2001). Accordingly, Defendants' motion to dismiss the unjust enrichment claims is GRANTED.

## V.   Declaratory Relief

Plaintiffs assert a separate cause of action for declaratory relief.   However, a declaratory judgment is a remedy, not a cause of action.   See In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993) ("[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."); Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action").   Accordingly, Defendants' motion to dismiss Plaintiffs' separate cause of action for declaratory relief is GRANTED.

## VI.  Leave to Replead

Although Plaintiffs have not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court

should freely give leave [to amend] when justice so requires"). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). For the reasons articulated above, the Court finds that it would be futile to grant Plaintiffs leave to replead their New York Insurance Law, unjust enrichment, and "declaratory judgment" causes of action, and those claims are hereby DISMISSED WITH PREJUDICE.  The Court GRANTS Plaintiffs leave to replead their Florida Insurance Law and New York common law fraud claims to correct the pleading deficiencies discussed above.

<u>CONCLUSION</u>

        For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint is GRANTED, and Plaintiffs' Complaint is DISMISSED.  Plaintiffs' New York Insurance Law, unjust enrichment, and declaratory judgment claims are DISMISSED WITH PREJUDICE, and Plaintiffs' Florida Insurance Law and New York common law fraud claims are DISMISSED WITHOUT PREJUDICE with LEAVE TO REPLEAD.  Although the Court is dismissing

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

Plaintiff's separate cause of action for declaratory judgment with prejudice, this does not bar Plaintiffs from seeking a declaratory judgment as a form of relief in their amended pleading.  Any Amended Complaint must be filed within thirty (30) days of the date of this Memorandum and Order, or the Complaint will be deemed dismissed with prejudice and this matter closed.

                              SO ORDERED.

                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:       September  30  , 2013
             Central Islip, NY